**James David DUCKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–00–00436–CR.

Court of Appeals of Texas, Dallas.

May 24, 2001.

George R. Conkey, Dallas, for Appellant.

William T. (Bill) Hill, Jr., Amy Sparks Williams, Asst. Dist. Atty., Dallas, for Appellee.

Before Justices LAGARDE, KINKEADE, and JAMES.

## OPINION

Opinion By Justice LAGARDE.

James David Ducker appeals his conviction of aggravated sexual assault of a child younger than fourteen years of age. TEX. PEN.CODE ANN. § 22.021 (Vernon Supp. 2001). Appellant entered a plea of not guilty, but changed his plea to guilty after the State's opening statement. Appellant also pleaded true to one enhancement paragraph. The trial court accepted appellant's guilty plea and instructed the jury to find appellant guilty as charged in the indictment. The jury found appellant guilty, and the trial court assessed punishment at life imprisonment.

In two points of error, appellant contends his plea was not knowing and voluntary because the trial court failed to admonish appellant regarding the statutory requirement that he register as a sex offender following service of his prison term. Appellant also contends that the trial court erred by failing to *sua sponte* withdraw his guilty plea. For reasons that follow, we overrule appellant's two points of error and affirm the trial court's judgment.

### Factual and Procedural Background

In 1999, the grand jury indicted appellant for sexually assaulting his son, who was five years old at the time of

the assault. The trial court explained to appellant his various plea options and admonished appellant on the range of punishment, including how his previous felony conviction affected that range. After the State read the indictment, the trial court asked appellant what his plea would be. Appellant responded, "I guess I have to go with not guilty." Two days later, following voir dire, appellant twice told the trial court that he wanted to change his plea to guilty. First, appellant told the trial court, outside the presence of the jury, that he wanted to talk with his son when he was brought into the courtroom. The trial court told appellant that he did not have the right to speak to his son, and if he refused to remain quiet when his son testified he would be placed in the holdover where he could only hear the proceedings. At that point, appellant told the trial court he did not "want to put this boy through this," and wanted to change his plea. The trial court told appellant to think about "whether you really want to change that plea or not" while the jury was sworn and the indictment read to the jury. The jury entered the courtroom and was sworn. The indictment was presented to the jury, and the trial court asked appellant's trial counsel what his client's plea was. Trial counsel told the trial court that appellant was entering a plea of not guilty. After the State presented its opening statement, appellant stated, "I want to go ahead and end this. I don't want to bring my son in." The State objected to appellant's outburst, and appellant then stated, "I'm guilty. Okay." The jury was removed from the courtroom following this outburst.

After the jury retired to the jury room, appellant's trial counsel told the trial court that before the indictment was read, appellant told her he wanted to plead guilty.

Counsel said she entered a not guilty plea because she thought appellant simply wanted to contest the culpable mental state alleged in the indictment. Appellant again told the trial court that he did not want his son to be hurt by testifying. After removing appellant from the courtroom, the trial court instructed appellant's counsel that appellant would need to sign a judicial confession if he wanted to enter a plea of guilty. Following a recess, appellant returned to the courtroom. Outside the presence of the jury, the trial court asked appellant if he understood that by entering a plea of guilty the court would instruct the jury to find him guilty. Appellant said he understood, and the jury was brought back in. Appellant told the trial court that he wanted to change his plea. The State offered appellant's signed judicial confession into evidence, and it was admitted without objection. The jury found appellant guilty after the trial court instructed the jury to find appellant guilty as charged in the indictment. The trial court then heard evidence as to punishment. At the conclusion of evidence, the trial court sentenced appellant to life imprisonment.

### Failure to Admonish

In his first point of error, appellant contends his guilty plea was not knowing and voluntary because the trial court failed to admonish him about sex offender registration as required by article 26.13(a)(5) of the code of criminal procedure. TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(5) (Vernon Supp.2001). Article 26.13(a) requires a court, before accepting a plea of guilty, to admonish the defendant on the following: (1) the punishment range; (2) the fact that the prosecution's sentencing recommendation is not binding on the court; (3) the limited right to appeal; (4) the possibility of deportation; and (5) the fact that the

defendant will be required to register as a sex offender pursuant to Chapter 62 of the code of criminal procedure if the defendant is convicted of, or placed on deferred adjudication for, an offense subject to that chapter. TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(1)-(5) (Vernon Supp.2001). In 1999, article 26.13(a) was amended to include an admonishment regarding sex offender registration and became effective as amended September 1, 1999. *See* Act of June 19, 1999, 76th Leg., R.S., ch. 1415, § 1, subsec. (a), 1999 Tex. Gen. Laws 4831, 4832. This amendment does not contain a savings clause, so article 26.13(a)(5) applies to all cases tried on or after September 1, 1999. *See* Act of June 19, 1999, 76th Leg., R.S., ch. 1415, § 1, subsec. (a), 1999 Tex. Gen. Laws 4831. Because appellant was tried in February 2000, the amendment to subsection (a) was in effect when this case was tried.

Before 1997, Texas law was unsettled concerning whether a trial court's failure to give an article 26.13 admonishment constituted reversible error. In *Whitten v. State*, 587 S.W.2d 156 (Tex.Crim.App. ,1979), the court of criminal appeals held that where an admonishment was not given, but the admonishment was immaterial to the plea, the trial court was still in substantial compliance with the statute. But a total failure of the trial court to admonish the defendant concerning the range of punishment constituted reversible error, without regard to whether the defendant was harmed. *Id.* at 158; *see also Ex parte McAtee*, 599 S.W.2d 335 (Tex. Crim.App.1980). Using this method, Texas courts focused their analysis on article 26.13(c), which states that substantial compliance with the admonishment requirements is sufficient "unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court." TEX.CODE CRIM. PROC.

ANN. art. 26 .13(c) (Vernon 1989). But in 1994, the court of criminal appeals rejected the *Whitten* approach of finding substantial compliance where there was in fact no compliance with a particular admonishment. *Morales v. State*, 872 S.W.2d 753, 755 (Tex.Crim.App.1994) (holding that the total failure of a trial court to admonish defendant that plea of guilty could result in deportation was reversible error, without showing of harm). In *Morales*, the record was silent on whether the defendant was a U.S. citizen. As such, the deportation consequences of a guilty plea could have been material to the defendant's plea.

After *Morales*, several intermediate appellate courts applied the "substantial compliance through immateriality" analysis to distinguish *Morales* from cases where the record affirmatively established that the defendant was a U.S. citizen. *Durst v. State*, 900 S.W.2d 134, 139–40 (Tex.App.—Beaumont 1995, pet. ref'd) (holding that the deportation admonishment is immaterial to a defendant's guilty plea when the record clearly shows that the defendant is a U.S. citizen); *Dixon v. State*, 891 S.W.2d 783, 783–84 (Tex.App.—Austin 1995, no pet.) (analyzing *Morales* as teaching that reversal is required when a trial court fails to admonish the defendant about deportation consequences only if the defendant is not a U.S. citizen or the defendant's citizenship is unknown); *Dominguez v. State*, 889 S.W.2d 13, 15–16 (Tex.App.—El Paso 1994, no pet.) (holding that when a defendant is a U.S. citizen, the trial court substantially complies with article 26.13 despite the trial court's failure to admonish on the deportation consequences of the plea). These courts reasoned that the trial court had substantially complied with article 26.13(a), despite the trial court's failure to admonish the defendant on the deportation consequences of his plea, because as a

U.S. citizen the defendant was not subject to deportation and, thus, the admonishment would not have affected the voluntariness of the plea. *Durst,* 900 S.W.2d at 139–40; *Dixon,* 891 S.W.2d at 784; *Dominguez,* 889 S.W.2d at 16.

In *Cain v. State,* 947 S.W.2d 262 (Tex.Crim.App.1997), the court of criminal appeals rejected the "substantial compliance through immateriality" analysis and held that a failure to admonish under article 26.13(a)(4) is subject to a harmless error analysis. *Cf. McGowin v. State,* 912 S.W.2d 837, 841 n. 2 (Tex.App.—Dallas 1995, no pet.) (acknowledging problems with *Morales,* and stating that "[a] violation of article 26.13(a)(1) permits no harm analysis, and a violation of 26.13(a)(4) is subject to a harm analysis"). The court of criminal appeals clarified this required harmless error analysis in *Carranza v. State,* 980 S.W.2d 653 (Tex.Crim.App. 1998). Under *Carranza,* a court does not substantially comply with article 26.13(a) when it fails to admonish a defendant on one of the statutorily required admonishments. *Id.* at 655–56 (holding that the trial court did not substantially comply with article 26.13(a)(4) when it failed to admonish the defendant, either orally or in writing, regarding the deportation consequences of his plea). The court further held that this error was non-constitutional error subject to a rule 44.2(b) harmless error analysis. *Id.* at 656. The court struggled with defining an appropriate standard of review due to the "substantial compliance" language implicit in article 26.13(c). *Id.* at 657–58. But the court determined that under rule 44.2(b), when there has been no substantial compliance with the admonishment requirements of article 26.13, a defendant is required to show *no more than* his unawareness of the consequences of his plea and that he was misled or harmed by the admonishment of the court. *Id.* at 658.

But courts still consider whether those consequences are direct or collateral in determining if the voluntariness of the plea was undermined by the failure to admonish. For example, the court of criminal appeals has considered whether the defendant was made fully aware of the direct consequences of a guilty plea when determining the voluntariness of the plea. *State v. Jimenez,* 987 S.W.2d 886, 888–89 (Tex.Crim.App.1999) (applying *Carranza* to a misdemeanor case and holding that an admonishment on the deportation consequences of a guilty plea is not constitutionally required). Generally, a guilty plea is considered voluntary if the defendant was made fully aware of the direct consequences of the plea. *Id.* at 888 (citing *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). A guilty plea will not be rendered involuntary by lack of knowledge of some collateral consequence. *Id.* The deportation consequence of a guilty plea is generally considered a collateral consequence. *Id.* Similarly, before article 26.13(a) was amended to include an admonishment on sex offender registration, Texas courts held that sex offender registration was only a collateral consequence of a plea of guilty. *Ruffin v. State,* 3 S.W.3d 140, 144 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd) (holding that the requirement to register as a sex offender has no impact on the range of punishment and, therefore, is not a direct consequence of a plea of guilty to the offense of sexual assault); *Guzman v. State,* 993 S.W.2d 232, 236 (Tex.App.—San Antonio 1999, pet. ref'd) (holding that failing to admonish a defendant on his statutory duty to register as a sex offender did not invalidate the guilty plea); *In re B.G.M.,* 929 S.W.2d 604, 606–07 (Tex.App.—Texarkana 1996, no pet.) (holding that the possibility of required sex offender registration is not a mandato-

ry admonishment in a juvenile proceeding because the registration requirement is a remedial and collateral consequence of the plea). Although the requirement to register as a sex offender is now a required admonishment under article 26.13(a)(5), it does not impact a defendant's sentence and is meant to be remedial, rather than punitive. *Ruffin*, 3 S.W.3d at 144; *In re B.G.M.*, 929 S.W.2d at 606–07.

■ Applying *Carranza* and the concepts of direct versus collateral consequence to the facts of this case, we hold that the trial court's failure to admonish appellant on the sex offender registration requirement constitutes harmless error and did not render his plea of guilty involuntary. Here, the trial court erred by failing to admonish appellant on the statutorily required sex offender registration. But appellant has failed to show that he was unaware of the consequences of his plea and that he was misled or harmed by the trial court's admonishment. In his statement to police, appellant admitted sexually assaulting his son. Appellant told the trial court that he understood the range of punishment and understood that by pleading guilty the jury would find him guilty. He also understood the trial court would assess punishment within the applicable punishment range. Appellant twice told the trial court he wanted to change his plea to guilty. In fact, the record shows appellant wanted to plead guilty before his trial counsel entered a not guilty plea in front of the jury. Appellant clearly understood he would be found guilty and sentenced accordingly if he pleaded guilty. There is no evidence he would not have pleaded guilty if the trial court had admonished him on sex offender registration. The registration requirement did not affect the range of punishment and if appellant serves out his full life sentence, he will never be subject to the registration re-

quirement. As such, the sex offender registration requirement was a collateral consequence of appellant's plea and did not affect the voluntariness of that plea. *See Ruffin*, 3 S.W.3d at 144.

■ Appellant contends he was clearly unaware of the consequences of his plea because he was agitated when he changed his plea to guilty. Although the record does reflect that appellant was upset at the prospect of his son testifying, there is no evidence in the record that appellant was mentally incompetent at the time he changed his plea or in any way unaware of the consequences of pleading guilty. The voluntariness of a guilty plea is determined from the totality of the circumstances viewed in light of the entire record. *Ybarra v. State*, 960 S.W.2d 742, 745 (Tex. App.—Dallas 1997, no pet.). Thus, the trial court need not specifically inquire if a plea is being given freely and voluntarily. *Singleton v. State*, 986 S.W.2d 645, 651 (Tex.App.—El Paso 1998, pet. ref'd). Likewise, unless an issue is made of a defendant's present mental competence at the time the plea is entered, the trial court need not specifically inquire into his mental competence. *Sims v. State*, 783 S.W.2d 786, 788 (Tex.App.—Houston [1st Dist.] 1990, no pet.) (citing *Kuyava v. State*, 538 S.W.2d 627, 628 (Tex.Crim.App.1976)). Appellant did not put his mental state at issue at the time the plea was entered, and there is no indication in the record that he was incompetent to change his plea. Because appellant has failed to prove that he was unaware of the consequences of his plea and he was misled or harmed by the trial court's admonishments, we hold that the failure to admonish appellant on the sex offender registration requirement constitutes harmless error and did not affect the voluntariness of his plea. We overrule appellant's first point of error.

### Trial Court's Duty to Withdraw Appellant's Guilty Plea

 In his second point of error, appellant contends the trial court erred by not *sua sponte* withdrawing his guilty plea. Specifically, appellant contends the trial court had a duty to withdraw his plea because the trial court had evidence before it raising a bona fide doubt about his mental competence. Appellant points to his statements to the trial court, such as he was tired because he had been up for sixty hours and could not think straight, as evidence of his unstable mental state. Appellant also contends the trial court's postponement of punishment due to appellant's "agitated state" indicates the trial court had concerns about appellant's competency. We disagree. Unless an issue of an accused's mental competency is raised at the time of the plea, the trial court need not inquire into the accused's mental competency, and it is not error for the trial court to accept the plea. *Kuyava*, 538 S.W.2d at 628. There is no evidence in the record that the trial court was concerned that appellant's plea was involuntary due to his mental state. The trial court had the opportunity to observe and talk with appellant and did not indicate a concern about the voluntariness of the plea or appellant's mental competency. Moreover, appellant did not raise the issue of competency. Appellant was able to communicate with his attorney and told the trial court on more than one occasion that he understood the proceedings against him and the implications of his plea.

 Appellant relies on *Conroy v. State*, 843 S.W.2d 794 (Tex.App.—Houston [1st Dist.] 1992, no pet.), to support his contention that if the trial court had any doubts about his competency it should not have accepted the plea. Appellant's reliance on *Conroy* is misplaced. In *Conroy*, the court held that the trial court's refusal to allow the defendant to change his plea to guilty, after pleading not guilty in the presence of the jury, indicated the court had doubts about the changed plea. *Id.* at 796. Here, there is no evidence the trial court had any doubts or hesitations about appellant's changed plea. Appellant also contends that because he entered a plea of not guilty in front of the jury, the trial court should have required the State to present evidence and then submitted the case to the jury to decide appellant's guilt or innocence. Appellant cites no authority for this proposition. Because there is no evidence in the record that appellant was mentally incompetent at the time he entered his guilty plea, we hold the trial court did not err by accepting appellant's guilty plea. We overrule appellant's second point of error.

For the foregoing reasons, we overrule appellant's two points of error and affirm the trial court's judgment.