In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00237-CR**
**NO. 09-18-00238-CR**
**NO. 09-18-00239-CR**

_____

**CAMERON CORDELL MOORE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 17-03-03445-CR, 17-03-03446-CR, 17-03-03447-CR**

**MEMORANDUM OPINION**

The State charged Cameron Cordell Moore by indictment with Aggravated

Robbery with a deadly weapon in three separate cause numbers. *See* Tex. Penal Code

Ann. § 29.03(a)(2) (West 2019). Moore pled guilty to all three counts of aggravated

robbery and agreed for the trial court to assess punishment. In three issues before the

Court, Moore argues that his plea was involuntary, that the trial court erred by

1

including a finding of a deadly weapon enhancement, and his trial counsel was ineffective. Moore's plea admonishment in each cause stated the following:

> [Moore] has [pled] guilty to the above named offense, and has elected to go to the Court for punishment. In exchange for the State['s] consent to waiver of Jury Trial [Moore] waived Deferred Adjudication and [pleads] Guilty to Aggravated Robbery. Range of punishment will be 5-99 or Life at Sentencing Hearing. [Moore] did then and there along with [accomplices] commit the offense of Aggravated Robbery[.]

After a sentencing hearing, the trial court sentenced Moore to forty years of confinement on each count and ruled that the sentences would run concurrently. Moore appealed in all three cases.

### Involuntary Plea and Ineffective Assistance of Counsel

In his first and third issues, Moore asserts that his plea was involuntary because it was not made "with a clear understanding of [the] direct consequences of the plea." According to Moore, he received ineffective assistance of counsel because his trial counsel "fraudulently represented that [he] could only elect for the jury to assess punishment if he proceeded to a jury trial[,]" and this misinformation resulted in Moore making an involuntary plea.

"An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Ex Parte Felton*, 815

2

S.W.2d 733, 735 (Tex. Crim. App. 1991)). To establish ineffective assistance of counsel, an appellant must meet a two-pronged test:

(1) [T]he defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

(2) [T]he defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986) (adopting and applying the *Strickland* test). "Unless [an] appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Strickland*, 466 U.S. at 687). Allegations of ineffectiveness must be shown in the record, and the record must affirmatively establish the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. There is a strong presumption counsel's conduct "[fell] within the wide range of reasonable professional assistance[.]" *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (quoting *Strickland*, 466 U.S. at 689); *see also Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

3

As for a defendant being prejudiced by a trial attorney's deficient performance, courts have explained "[t]o show prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Jackson*, 877 S.W.2d at 771 (quoting *Strickland*, 466 U.S. at 694).

A defendant is entitled under the Sixth Amendment to effective assistance of counsel in guilty-plea proceedings. *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010); *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). A guilty plea may be considered involuntary due to ineffective assistance of counsel. *Ex parte Moussazadeh*, 361 S.W.3d 684, 688–89 (Tex. Crim. App. 2012); *Harrington*, 310 S.W.3d at 458–59. If a defendant pleads guilty based upon erroneous advice of counsel, the plea is not given voluntarily and knowingly. *Moussazadeh*, 361 S.W.3d at 689. "Competent counsel has a duty to render his best judgment to his client about what plea to enter, and that judgment should be informed by an adequate and independent investigation of the facts of the case." *Ex parte Reedy*, 282 S.W.3d 492, 500 (Tex. Crim. App. 2009). A defendant must demonstrate that but for the erroneous advice of counsel, that he would not have pled guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985) (holding

that the two-part *Strickland* test applies to guilty pleas); *Ex parte Moody*, 991 S.W.2d 856, 857–58 (Tex. Crim. App.1999) (citations omitted).

Moore contends his trial counsel provided incorrect information about whether he would be required to have the jury decide punishment if he pled guilty in a jury trial. The following exchange occurred before Moore's sentencing hearing.

> THE COURT: . . . I'd like to just go over briefly—if the parties will let me know, I guess, the foundation of the Plea, what actually transpired, what the agreement is, that type of thing.
>
> [THE STATE]: Your Honor, the agreement is that the defendant has previously pled guilty to all three robbery charges. In exchange for the State's waiver of their right to [a jury] trial[,] the defendant waived his right to a deferred, so that the range of punishment for the Court would be 5 to 99 years or life on each of the three offenses, but the sentences would run concurrent to each other.
>
> THE COURT: The sentences would run concurrent?
>
> [THE STATE]: Yes. Yes, Your Honor.
>
> THE COURT: Okay. And, [Defense Counsel], that's your understanding of the agreement?
>
> [DEFENSE COUNSEL]: It is, Your Honor. The State would not waive its right to a jury trial, which put us in the position of having to go to the jury trial. And the Court was of the opinion if we went to [a] jury trial we would have to go to the jury for punishment. So, in order to forgo that and forgo a trial, since this young man has confessed and professed his guilt, we waive any consideration of the—
>
> THE COURT: Deferred.

[DEFENSE COUNSEL]: —deferred adjudication, yes, ma'am; and it is as he stated.

THE COURT: All right. And, Mr. Moore, is that your understanding of the agreement that you and your lawyer have entered into with the State of Texas?

THE DEFENDANT: Yes.

THE COURT: Yes?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. And do you still understand that the range of punishment applicable for your particular case is a possible sentence of 5 years all the way up to 99 or life? Do you understand that, sir?

THE DEFENDANT: (Nods.)

THE COURT: Understood. It is a serious matter, but I also want to make sure that you completely understand what you've agreed to. Do you?

THE DEFENDANT: Yes, ma'am.

THE COURT: Yes?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Okay. At the time of the plea do the parties know—I haven't looked it up. I'll be happy to do that—but were the stipulations and admonishments entered as to whether or not the plea was made voluntarily, knowingly, intelligently, and that he understood the rights he was waiving by entering that plea?

[THE STATE]: Yes, Your Honor.

[DEFENSE COUNSEL]: Yes, they were.

6

Assuming without deciding that Moore's trial counsel's advice was in error, Moore cannot overcome the second prong of *Strickland* because he did not prove that he was prejudiced by his trial counsel's performance. *See Ex parte Fassi*, 388 S.W.3d 881, 887 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Luna v. State*, 401 S.W.3d 329, 336 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (quoting *Strickland*, 466 U.S. at 697) ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."")). The determination of whether it would have been rational for a defendant to plead not guilty is an objective test that "'turns on what a reasonable person in the defendant's shoes would do.'" *Fassi*, 388 S.W.3d at 887 (quoting *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (per curiam)). We consider the totality of the circumstances surrounding the plea and the gravity of the alleged failure material to that determination. *See Moody*, 991 S.W.2d at 858; *Ducker v. State*, 45 S.W.3d 791, 796 (Tex. App.—Dallas 2001, no pet.).

Moore failed to demonstrate that he would have pled not guilty and proceeded to trial but for counsel's defective advice. The record reflects that Moore intended to plead guilty, that his plea was to avoid the jury assessing his punishment, and by electing to enter into a plea bargain, the trial court assessed his punishment. *See*

*Luna*, 401 S.W.3d at 336 (explaining that testimony at trial supported the contention that the defendant's plea was not involuntary and not the result of ineffective assistance of counsel because testimony established that even if defendant had received correct legal advice about deportation, he would not have gone to trial because the defendant wanted to avoid potential jail time). Moore does not direct this Court to any evidence in the record that, but for his trial counsel's advice, he would have pled not guilty. We are unpersuaded by Moore's single statement in his brief that "[b]ecause the appellant felt the only way to go to the judge for punishment was to waive his constitutional right to a trial by jury his plea was involuntary and his counsel was ineffective." Having failed to show that counsel's performance prejudiced him and that his plea was involuntary, we overrule Moore's first and third issues.

**Deadly Weapon Finding**

In Moore's second issue, he argues that because the trial court failed to make an affirmative deadly weapon finding in its judgments, his case is reduced from aggravated robbery to robbery and he is entitled to remand for new trial for punishment. The State concedes that the judgments state "N/A" under the deadly weapon finding but argues that it was unnecessary to include that finding because

8

Moore pleaded guilty to aggravated robbery, an offense that necessarily includes a deadly weapon.

"An affirmative deadly-weapon finding must be an 'express' determination in order to be effective." *Guthrie-Nail v. State*, 506 S.W.3d 1, 4 (Tex. Crim. App. 2015) (citing *Ex parte Empey*, 757 S.W.2d 771, 774 (Tex. Crim. App. 1998)). When a judgment fails to make a deadly weapon finding, we must review whether the error was a clerical error or a conscious decision by the trial court to exclude the finding. *Id*.

At the sentencing hearing, the following exchange occurred:

THE COURT: All right. And do I note that the findings on deadly weapon have—on the judgments that I've been provided say "n/a," that its not applicable. That was part of the plea bargain as well?

[THE STATE]: Your Honor, he pled to the aggravated robbery, which includes it within the 3G; so we did not—

THE COURT: So you didn't have to place it on the judgment. Is that what you are telling me?

[THE STATE]: Yes, Your Honor.

THE COURT: Okay. So I just note for the record that all three of these judgments . . . have "n/a" as the finding for deadly weapon, just so all parties are clear. All right.

. . .

9

Here, the trial court did not make a deadly weapon finding in its judgments. The trial court has the discretion to enter a deadly weapon finding even in instances where a deadly weapon is a necessary element of the crime. *Id.* at 4–5. We review the record to determine if the trial court made a conscious decision to not include a deadly weapon finding or if the lack of finding is due to a clerical mistake. *Id.*

The record does not support that the trial court made a clerical mistake when it failed to include a deadly weapon finding in the judgments. The trial court asked the prosecutor about the deadly weapon finding and, based on the information provided by the prosecutor, declined to make the finding in the judgments. *See id.* at 7 (stating that "[t]he written entry in the judgment would seem to be an explicit determination that a deadly-weapon finding was *not* being made, and it is more explicit than the trial judge's oral pronouncement of guilty 'as set forth in the indictment'"). This was a conscious decision by the trial court to not include a deadly weapon finding rather than a clerical mistake.

The State argues that because Moore pled guilty to a "3G" offense (noting that the prosecutor in trial was referring to the now repealed 3g section of article 42.12 of the Code of Criminal Procedure and directing this Court to the current version under article 42A.054 of the Code of Criminal Procedure), "there is nothing improper about a judgment of conviction for an offense requiring the use or

10

exhibition of a deadly weapon, and the lack of an entry of an affirmative finding of the use or exhibition of a deadly weapon under article 42A.054(c) of the Code of Criminal Procedure." *See* Tex. Code of Crim. Proc. Ann. art. 42A.054 (West 2018).[1] We are unpersuaded by this argument. Our review of article 42A.054(c) finds that "[o]n an affirmative finding regarding the use or exhibition of a deadly weapon as described by Subsection (b), the trial court *shall* enter the finding in the judgment of the court." Tex. Code of Crim. Proc. Ann. art. 42A.054(c) (emphasis added). While the State is correct that "a lack of entry of an affirmative finding . . . of a deadly weapon" has no effect on the validity of the judgments of conviction, the State is incorrect in asserting that because Moore pled guilty to a "3G" offense, the trial court was not required to make an affirmative finding of a deadly weapon in its judgments. *See Guthrie-Nail*, 506 S.W.3d at 6 (noting that a trial judge has the discretion to add a deadly-weapon finding "even after finding the defendant guilty of an offense in which use of a deadly weapon was a charged or necessary element"). Article 42A.054(c) refutes that assertion and demands that the trial court, once it decides to

---

[1] Texas Code of Criminal Procedure Article 42.12 § 3g was repealed by the Legislature and recodified as Texas Code of Criminal Procedure Article 42A.054. *See* Act of June 17, 2015, 84th Leg., R.S., ch. 770, § 1.01, 2015 Tex. Gen. Laws 2321, 2321-65 (codified at Tex. Code Crim. Proc. Ann. art. 42A.054); *see also* Tex. Code Crim. Proc. Ann. art. 42A.054 (West 2018); *Bell v. State*, No. 13-18-00357-CR, 2019 WL 3953107, at *2 n.3 (Tex. App.—Corpus Christi August 22, 2019, no pet.) (mem. op., not designated for publication)

11

make a deadly weapon finding, enter an affirmative finding of a deadly weapon in its judgment. *See Id.*, 506 S.W.3d at 4 (explaining that failure of the record to conclusively establish a deadly weapon finding, either by oral pronouncement or by "express words, in a verdict or judgment, that refer to a portion of the charging instrument that includes a deadly-weapon allegation[,]" is ineffective).

While a reviewing court has the ability to reform a judgment due to a clerical error, we do not believe that the trial court's exclusion of a deadly weapon finding was clerical. *See Bigley v. State*, 865 S.W.2d 27–28 (Tex. Crim. App. 1993). The trial court made a conscious decision to not include the deadly weapon finding in its judgments. Therefore, we cannot reform the trial court's judgments to reflect a deadly weapon finding in these instances.

Moore argues in his brief that because the judgments of the trial court does not include a deadly weapon finding, he was only convicted of robbery, not aggravated robbery; as such, his sentence fell outside the statutorily mandated sentencing for robbery. Moore is incorrect. The record reflects that Moore pled guilty to aggravated robbery as alleged in the indictment. The indictment charges Moore with aggravated robbery and includes language that he used a deadly weapon in commission of his crime. Moore also agreed to a punishment range of 5 to 99 years in prison for his plea. The trial court's deadly weapon finding in the judgments

12

only affects Moore's parole eligibility date. *See Duran v. State*, 492 S.W.3d 741, 745 (Tex. Crim. App. 2016); *Ex parte Brooks*, 722 S.W.2d 140, 142 (Tex. Crim. App. 1986); Therefore, Moore is not entitled to a new punishment hearing.

## Conclusion

Having overruled all of Moore's issues on appeal, we affirm the judgments of the trial court.

AFFIRMED.

_____<br>
CHARLES KREGER<br>
Justice

Submitted on September 3, 2019
Opinion Delivered October 23, 2019
Do not publish

Before McKeithen, C.J., Kreger and Horton, JJ.

13